PETER F. CARR *vs.* AMERICAN LOCOMOTIVE CO.

JULY 9, 1908.

PRESENT: Dubois, Blodgett, Johnson, and Parkhurst, JJ.

(1) *Master and Servant. Safe Appliances. Verdict Against Evidence.*

In an action for injuries sustained by plaintiff, through alleged negligence of defendant, due to failure to provide safe appliances, evidence considered as to condition of valve stem and as to identity of stem, and held not to sustain verdict for plaintiff.

(2) *Master and Servant. Evidence.*

In an action by a servant against master for failure to provide safe appliances, the condition of the appliance before the accident may be properly shown, as bearing on the question of negligence in not repairing the defect.

(3) *Master and Servant. Evidence.*

In an action by a servant against master for failure to provide safe appliances, the number of oil burners like the one which figured in the accident in use in defendant's shop at the time may be properly shown by plaintiff, as a basis for showing the amount and kind of care bestowed upon them by defendant, and also in view of plaintiff's claim of a change of stems.

(4) *Evidence. Testimony of Deceased Witness.*

Testimony of deceased witnesses given at a former trial of an action may be read to the jury at a succeeding trial, and there is no distinction in this regard between testimony relating to facts in issue and opinion evidence.

(5)   *Master and Servant.   Evidence.*

In an action by a servant against master for failure to provide safe appliances, plaintiff may properly inquire of a witness how many turns he had been able to take in turning any of the valve stems of oil burners he had used, where they were in good working order, since the proper working of the valve and stem was material and defendant had admitted that the oil burners were similar to the ones used in defendant's works.

(6)   *Master and Servant.   Evidence.*

In an action by a servant against master for failure to provide safe appliances, it is proper for him to offer evidence as to his knowledge of the previous condition of the appliance, since knowledge of unsafe condition would have carried with it an assumption of a known risk.

(7)   *Evidence.   Photographs.*

Photographs of an appliance taken after the valves in question in the action had been removed and different valves substituted were properly excluded.

(8)   *Evidence at Former Trial.*

Cross-examination of a witness respecting his testimony at a former trial, made from the official record of his testimony in the case, is properly admitted.

(9)   *Evidence.   Making Witness Own Witness.*

The discretion exercised by a court in allowing questions of fact not alluded to in chief to be asked of a witness, in cross-examination upon offer by counsel to make the witness his own witness, should properly be limited to questions involving facts of a simple character relevant to the issue, and is solely for convenience to avoid the necessity of recalling the witness. It should not be exercised to the extent of converting a non-expert into an expert.

(10)   *Evidence.*

In an action by a servant against master, question by plaintiff "was there any talk among the men in the shop about the condition of the valve after the accident?" was properly excluded, since if shown it would bind neither the plaintiff nor defendant.

(11)   *Admission of Evidence.*

No exception lies to the exercise of the discretion of the court in admitting evidence which had been overlooked in direct examination.

(12)   *Evidence.   Reading Testimony at Former Trial.*

Counsel was properly permitted to read to the jury testimony of a witness given at a former trial, which testimony had been read to the witness and he had stated that he did not do the acts stated in such testimony and did not remember having so testified.

(13)   *Master and Servant.   Notice by Reasonable Diligence.*

In an action by a servant against master for failure to provide safe appliances, instructions of the court approved—that (1) defendant need not have actual

knowledge, if he might have had actual knowledge by the exercise of reasonable diligence to ascertain condition of appliance;    (2) that if the accident was due to the act of a fellow-servant, yet, if defendant by the exercise of reasonable diligence might have known of the injury in time before the accident to have repaired it, it was its duty to repair it or substitute another; (3) that defendant was not guilty of negligence in not repairing defects unless it was shown that it had actual notice, or might have had notice by the exercise of reasonable diligence.

TRESPASS ON THE CASE, for negligence.    Heard on exceptions of defendant, and sustained.

JOHNSON, J.    The facts in this case are stated in the opinion reported in 26 R. I. 180.    It was then before the court on a petition for a new trial.

Upon the new trial then granted  the jury found the defendant corporation guilty as charged in the declaration, and assessed the plaintiff's damages at $20,000.

They also found, on the special issues submitted to them:

1.    That the thread on the stem of the burner valve operated by the plaintiff at the time of the accident was not then in good working order.

2.    That the thread in the body of the burner valve operated by the plaintiff at the time of the accident was then in good working condition.

3.    That the valve stem produced in court as part of the burner valve in question, and forming a part of defendant's Exhibit A, was not the stem operated by the plaintiff at the time of the accident.

4.    That the burner valve exclusive of its stem, produced in court as a part of defendant's Exhibit A, was the burner valve operated by the plaintiff at the time of the accident.

5    That the accident to the plaintiff was not due to the formation and explosion of gases in the pipe which supplied the furnace with oil.

The defendant moved in the Superior Court for a new trial on the grounds that the verdict and the first and third special findings of the jury were against the evidence and the weight thereof, and that the damages awarded the plaintiff were excessive.

This motion was denied and the case is now before us on the defendant's bill of exceptions.

We will first consider the exception to the refusal of the Superior Court to grant the defendant's motion for a new trial on the grounds that the verdict and the first and third special findings of the jury were against the evidence and the weight thereof.

The justice presiding at the trial charged the jury that if the defendant's Exhibit A was the same appliance which was in use at the time of the accident, their verdict must be for the defendant. As the evidence showed conclusively that the thread in the body of the burner valve and the thread on the stem in the exhibit were both in good working condition, this instruction was correct.

The jury found that the thread in the body of the valve was in good working condition at the time of the accident, but found that the thread on the stem of the burner valve operated by the plaintiff at the time of the accident was not then in good working order; and further, that the valve stem produced in court as a part of the burner valve in question, and forming a part of defendant's Exhibit A, was not the stem operated by the plaintiff at the time of the accident. The identity of the stem, therefore, is the crux of the case.

On the question of the identity of the valve, the plaintiff testified (p. 5, Q. 16): "Were the valves in the pipe that are there now the same valves in the pipe that were there then? A. I don't think so." He also testified that the upper valve was equipped with a wheel (p. 8). On cross-examination (p. 37, Q. 274): "Will you look at this apparatus marked Defendant's Exhibit A, Mr. Carr, and tell us whether or not that is the apparatus that you were working with at the time of the accident? A. I don't know." And (p. 43, Q. 290 and 291) "Do you remember what kind of a piece of metal it was that LaForge put upon this burner valve that you were using at the time of the accident? A. It was much like this one; might have been this one. Might not. Q. Was it put on in the same manner that this is put on that middle valve in Defendant's Exhibit A? A. I couldn't say. Oh, it looked

the same; yes. Might have been hammered down as good."

Alfred McCool testified that the top valve was a valve with a wheel on it—a throttle. He said: "I wouldn't say that was the valve in use, for the valve was thin and similar to the one we had on, the same make of a valve and all, but to the best of my ability that ain't the handle that was on the valve when we used it." And, "Well, that is the same style of a valve, a valve same as that, but I wouldn't say that was the handle that was on it when we used to use it, for that cross-piece was a wider piece, to the best of my knowledge."

Oscar Nelson testified that there were two wheels and a cross-bar on the apparatus.

George Hammer testified that there were wheels, both on the air valve and the oil valve; that the flat part of the middle valve didn't look anything like the piece that was on at the time of the accident.

John F. Scallon, when asked to describe the piece of iron that was on the stem in place of a wheel, answered; "Well, it would be pretty hard to say exactly, but just to notice it going by, that is all, and I noticed, I should judge it would be anywheres from $\frac{1}{8}$ to $\frac{3}{16}$ thick and in the neighborhood of an inch wide and about $3\frac{1}{2}$ long." He testified that it was sheet-iron, and not boiler-iron; that the middle valve was not on it at the time of the accident; that the cross-bar on the stem was not on at the time of the accident; that everything else looked the same, but that he couldn't remember the bar on the lower valve.

Daniel Flynn testified that the top valve had an iron wheel; that the handle on the stem was about three-sixteenths of an inch thick; that there was no cross-bar on any other valve.

For the defendants, John McFarlane testified: "Yes, that is the burners and valves that was on there at the time of the accident;" that he could identify it by the two cross-bars, and by the vise marks on the stem of the middle valve.

Edward McLaughlin testified that the burner valve was on the furnace about ten days or two weeks after the accident; that he took it off under the orders of his foreman, Mr. Rawlings; that he took off the three valves, cleaned the apparatus up, and gave it to Mr. Rawlings; that the stem in the burner

valve was the same stem which figured in the accident; that the burner valve appeared to be in working condition; that the valves in defendant's Exhibit A are the same three valves that were in use at the time of the accident.

Edwin Smith testified that he was foreman boilermaker at defendant's shop at the time of the accident; identified defendant's Exhibit A as the apparatus that was on the furnace at the time of the accident; recognized the burner valve by the cross-bar on the stem; remembered that it was put on by LaForge, that LaForge called his attention to it, after he had riveted it on the stem, and asked him if it was satisfactory; that he examined the cross-bar and stem at the time; and, on cross-examination, identified the stem as the one which was in the burner when plaintiff operated the fire at the time of the accident; testified that he recognized the cross-bar and stem both; that if the cross-bar wasn't there he would still recognize the stem by the vise marks where it was gripped in the vise when the end was riveted over.

Fred LaForge testified that he put on the cross-bar; and, as to defendant's Exhibit A, testified: "Appears to be the same apparatus we had when the accident happened;" said he was positive that the cross-bar on the stem of the middle valve was the one he put on the stem. He could not read English or French. He said the other valve with a wheel is for air. He had not noticed the cross-bar on the upper valve stem; he first noticed it in court. He positively identified the middle stem of the exhibit as the stem in use on the day of the accident, but said he was not positive as to the other valves.

George S. Rawlings testified: "Looks to me to be the burner that was on there at the time of the accident;" that the apparatus was in use "somewhere around a couple of weeks" after the accident, and worked all right. The superintendent, Mr. Gurry, told him to have it taken off, and he told the piper to take it off. McLaughlin took it off and gave it to the witness, and he gave it to Mr. Gurry. There were two cross-bars on the apparatus, the same as now; that the stem in the middle valve was the same as in the exhibit, that he identifies it by

the handle and the way it looks, and that is the only identification he can make.

Mr. Gurry testified that when Mr. Rawlings gave him the apparatus he put it in a box and put it in a vault in his office, and kept it there until it was turned over to the court.

In rebuttal, Hammer, when asked whether the valve and burner on Exhibit A were the same that were in use the day Peter Carr was burned, answered: "I won't say whether it is or not, only the cross-piece don't appear the same because it is much heavier." When asked the difference between that cross-piece and the one that was on there, he answered: "This piece is much heavier in thickness than the piece that was on at the time I see it. In regards to the other part of it I won't say, only the valves appear much closer than—the valves I see at that time, they were much closer than on this piece now." He testified that they were about two inches apart, that the cross-bar he had seen on there was about an inch wide and about as long as the one on the exhibit, about three inches long; it was square in the center, and that it was number eight stock; that the thickness of the cross-bar was a little over an eighth of an inch; that he considered the one on the exhibit as about five-sixteenths of an inch in thickness.

Nelson testified that the cross-bar on the exhibit did not look like the one that was on the apparatus before the accident; that it looked to him to be thicker than the one on it at the time of the accident; that the one on the stem at the time was all roughened up from pounding; that he had often seen McCool start it with a pair of tongs or tools or anything he got hold of, and that it was all roughed up; that the cross-bar at the time of the accident was about three-quarters of an inch, or probably an inch, wide. When asked what thickness of stock it was, he answered: "Between $\frac{3}{16}$ or so;" said it didn't look as thick as the one on the exhibit.

McCool, when asked: "Is that the same stem and cross-bar and valve that was on the fire when Peter Carr got burned?" answered: "No, I don't think it is, to the best of my knowledge. That ain't the cross-bar." He testified that the other was wider, that it was all marked up, that the cross-bar on the

exhibit is not marred or marked up; that the mars on there have been put on with a hammer. He described the other cross-bar as being made out of a piece of number ten or number eight iron, he should judge, one-eighth of an inch thick, about an inch wide, probably 2½ to 3 inches long, to the best of his memory. He said that along the edge where they had been hitting it with the tongs it was rough, and that there were two wheels on the apparatus at the time of the accident; that is, a wheel on the oil valve and a wheel on the air valve.

The defendant's witnesses, McFarlane, McLaughlin, Edwin Smith, LaForge, Rawlings, and Gurry, all testified that the stem in the burner valve was the one which figured in the accident. As to the body of the valve, there was no attempt on the part of the plaintiff to contradict them, and the jury found specially that the body of the burner valve was in use at the time of the accident, and that the thread was in good condition.

All three of the witnesses, Hammer, Nelson, and McCool, were boilermakers and had nothing to do with operating the rivet-heater, except occasionally to light the fire. None of them had ever paid special attention to the cross-bar, nor had any of them ever measured it, or measured anything else about the heater, and they all testified from their impressions from their memory. Hammer's memory of the cross-bar which figured in the accident was that it was about an inch or an inch and a quarter wide, and three-sixteenths of an inch thick, and about three inches long. He estimated the bar on the defendant's exhibit, when he had it before him in the courtroom, as three-eighths of an inch wide and five-sixteenths of an inch thick. The bar on the exhibit actually measured eleven-sixteenths of an inch wide and three-eighths of an inch thick. Nelson, from his memory of the bar in use at the time of the accident, estimated the width of it as three-quarters of an inch or an inch. McCool, from memory, estimated the cross-bar at two and a half to three inches long, one inch wide, and one-eighth of an inch thick. He testified that he picked the stem up after the accident and put it into the valve.

The estimates of the three witnesses as to the dimensions of

the bar, on at the time of the accident, are as follows: Hammer, one to one and one-fourth inches wide, three-sixteenths inch thick; Nelson, three-fourths inch or an inch wide, three-sixteenths inch thick; McCool, one inch wide, one-eighth thick.

Defendant's exhibit measures eleven-sixteenths inch wide, three-eighths inch thick.

The plaintiff himself had as much reason to be acquainted with the appearance of the cross-bar as any person in the works, for it had been his business to operate it for a long period prior to the accident. On page 40 the plaintiff admitted that, at the first trial, the defendant's Exhibit A was presented to him, and that he made the following answer to the following question: "Q. Was that central valve with a handle on it the one you were using (at the time of the accident)? A. It looks like the same; yes."

Flynn, the plaintiff's witness who testified to seeing LaForge put on the cross-bar, and who operated the furnace prior to the plaintiff, when he had the defendant's Exhibit A presented to him, and was asked if the cross-bar on the burner valve was the one that he saw LaForge put on, answered: "Well, I couldn't say that it is. I couldn't say that it is not, but it was riveted over on the top like this."

The defendant's witnesses, LaForge, McFarlane, McLaughlin, Edwin Smith, Rawlings, and Gurry, testified that the stem and valve were put in use almost immediately after the accident and worked satisfactorily for from ten days to two weeks, when they were taken off the furnace and turned over to the superintendent. This was not disputed, and was further supported by the testimony of the plaintiff's witness, McCool, that he picked the stem up from the floor after the accident and put it back into the valve, and that the apparatus was used the same day and for a part of the week following, but McCool was unable to state just how many days.

McFarlane testified that he lighted the furnace about half an hour after the accident, that the valve worked all right, and that when he went to light the fire the stem was screwed up tight against its seat.

(1)    ·It thus appears from the testimony of witnesses, both for the defendant and for the plaintiff, that the stem worked properly in the valve just before the accident, immediately after the accident, and for the ten days or more that it remained on the furnace after the accident.

The evidence very strongly preponderates against the plaintiff as to the condition of the stem at the time of the accident and as to the identity of the stem in the exhibit with the stem in use at the time of the accident.

As there must be a new trial, we will consider the defendant's other exceptions.

As to the defendant's first exception, to the question: "Do you know how long it takes the average boy who starts in heating rivets before he becomes a boilermaker?" as the court ruled out all evidence as to the wages of boilermakers, we do not see that the defendant was injured by the question.

(2)    As to the second exception, we think it was proper to ask the witness McCool if he had had any trouble before the accident with this burner valve which figured in the accident. The condition of an appliance before an accident may properly be shown as bearing on the question of negligence in not repairing the defect. *Smith* v. *Old Colony, &c. R. R. Co.*, 10 R. I. 22 *Moran* v. *Corliss Eng. Co.*, 21 R. I. 386; *McGarrity* v. *R. R. Co.*, 25 R. I. 269; *Nelson* v. *Union R. R. Co.*, 26 R. I. 251; and *Hardacre* v. *Sayles*, 28 R. I. 235. The exception is overruled.

·The third exception was to the exclusion of evidence as. to defendant's Exhibit A in cross-examination of a witness after he had refused to identify the exhibit. It was properly excluded.

(3)    The fourth exception was to the admission of evidence of the number of oil burners, like the one which figured in the accident, in use in defendant's shop at the time of the accident. The evidence was competent. It was proper to show the number of burners as a basis for showing the amount and kind of care bestowed upon them by the defendant, and also in view of the plaintiff's claim of a change of stems.

The fifth exception was to a similar ruling, and subject to the same comment as the fourth.

The sixth exception was to the allowance of the following question: "If one of these stems in a burner valve such as you used at the Nicholson, and such as was on the valve where Peter Carr got burned, has the wheel lost from the end of the stem and a cross-piece of boiler iron is put on there and riveted on and then that stem is pounded and the valve is pounded and the pipe around the valve is pounded, what effect, in your opinion, would that have upon the stem in the valve; what effect would it probably have?" This question was too indefinite. The exception is sustained.

The seventh exception is overruled. The question: "If one of these stems in a burner valve like the one that Peter Carr was working on; in fact, the one he was working on, is turned out two or three turns in order to regulate the fire and then is blown out onto the floor a distance of four or five feet and the oil follows it, what would you say as to the working condition of the stem where that thing happened?" was based on the testimony, and was proper.

The eighth exception was to the exclusion of evidence as to defendant's Exhibit A · in cross-examination, the exhibit not having been identified. The exception is overruled for the same reason as number three.

. The ninth exception was to the allowance of the following question: "Now, then, considering this valve and considering and weighing the testimony that you have heard about the treatment of it, what in your opinion would be the probable effect of such pounding and hammering as you have heard these witnesses swear to, upon the working condition of this valve?" The question was limited to the testimony, and was proper.

(4)    The tenth and eleventh exceptions were noted to rulings of the court permitting the testimony of deceased witnesses, given at a former trial of this case, to be read to the jury at this trial.. The ruling was proper.

"Facts may be established by evidence thereof given on a former trial, provided the court is satisfied: (1) That the party against whom the evidence is offered, or his privy, was a party .on the former trial; (2) that the issue is substantially the same in the two cases; (3) that the witness who proposes

to testify to the former evidence is able to state it with satisfactory correctness; and (4) that a sufficient reason is shown why the original witness is not produced. The first three of these conditions render the reported evidence relevant; the fourth is necessary to justify the court in receiving it." 16 Cyc. p. 1088.

"The principle upon which depositions and former testimony should be resorted to is the simple principle of necessity, i. e., the absence of any other means of utilizing the witness' knowledge. If his testimony given anew in court cannot be had, it will be lost entirely for the purposes of doing justice if it is not received in the form in which it survives and can be had. The only inquiry, then, need be: Is his testimony in court unavailable?" 2 Wigmore on Evidence, § 1402.

No case has come to our attention which makes a distinction in this regard between the testimony of deceased witnesses swearing to facts in issue and witnesses giving opinion evidence, nor does there seem to be any good ground for such distinction in principle.

The twelfth exception is overruled. This exception was taken at a former trial to the question put to plaintiff's expert, Turner, and the answer thereto: "From what oil burners you have seen where the oil was under pressure and being fed into the fuel burner and closed by the valve and valve stem, have you seen in common use such a valve without a checking device?" This exception was overruled in Carr v. Locomotive Co., 26 R. I. 180, 189–190.

As to the thirteenth exception, it was proper to ask the witness Gibbons how many turns he had been able to take in turning any of the valve stems on the middle valves of oil burners he had used, where they were in good working order. The proper working order of the valve and stem was material. Further, it had just been admitted by defendant's counsel that the oil burners were similar to the ones used in defendant's works.

The fourteenth exception is substantially identical with the sixth exception, and is sustained for the same reasons.

The fifteenth and sixteenth exceptions are similar to the third

and eighth exceptions, and are overruled for the same reasons.

The seventeenth exception is similar to the fourteenth, and is sustained for the same reason.

The eighteenth exception came too late.

The nineteenth exception is overruled. It was proper to ask (6) the plaintiff as to his knowledge of the previous condition of the valve. Knowledge of unsafe condition would have carried with it an assumption of a known risk.

The twentieth exception is like the nineteenth.

The twenty-first exception is sustained for the same reason as the fourteenth and seventeenth.

The twenty-second exception was noted to cross-examination of a witness presented to identify defendant's Exhibit A. He had testified that the valves in question had been taken off, that they were there in the afternoon and the next morning they were not there; that there was a different valve there; that he could tell it was different by the looks of it. "Q. What about the new one that looked different?" This question was allowed, and exception taken. The question was proper in cross-examination.

The twenty-third exception, is like the fourteenth, seventeenth, and twenty-first exceptions and is sustained for the same reasons.

(7)    The twenty-fourth exception was taken to the exclusion of photographs of the firebox and burners taken after the valves in question had been removed and different valves substituted. The exclusion was proper.

The twenty-fifth exception is like the fourteenth, and is sustained for the same reasons.

The twenty-sixth exception was taken to the admission of testimony relative to checking-device on stem. The testimony in question tended to raise an irrelevant and improper issue, and should have been excluded.

The twenty-seventh exception is not pressed.

The twenty-eighth exception was taken to proper cross-examination of the witness LaForge as to his treatment of the stem and valve, in view of his testimony as to his striking it while in use.

(8)    The twenty-ninth exception was taken to cross-examination of the witness LaForge respecting his testimony at a former trial, made from the official record of his testimony in the case. The exception is overruled.

The thirtieth, thirty-first, and thirty-second exceptions are sustained for the same reasons as the fourteenth.

The thirty-third exception was taken to the exclusion of a question asked of the superintendent of defendant's works; by defendant's counsel: "Who was there in the works, aside from the operator himself, who would have had any reason for feeling any responsibility for this accident?" Responsibility in a case of this kind is a matter of law predicated upon proof, and it is entirely immaterial who would have had any reason for feeling any responsibility for the accident. The exception is overruled.

The thirty-fourth exception was taken to the exclusion of a practical repetition of the same question, and is overruled for the same reason.

(9)    The thirty-fifth exception was taken to the allowance of the following question: "If a valve like that equipped with a wheel fits so that the stem could not be moved by taking hold of it with the fingers, and the wheel becomes lost and a man does a job like that on the end of the stem by putting a crossbar on it to take the place of the wheel, and after that job is done the stem is found to be loose in the valve, so that it wobbles and so that it can be taken out by the fingers, would you say the doing of the work had anything to do with the changed condition in the stem in the valve?"

The question was improper for three reasons: (1) because it was too indefinite to be addressed even to an expert; (2) because the witness was not called and qualified as an expert; and (3) because it did not relate to any subject upon which the witness had been examined in chief. The discretion sometimes exercised by a court in allowing questions of fact not alluded to in the examination in chief to be asked of a witness in cross-examination upon offer by the examining counsel to make the witness his own witness should properly be limited to questions involving facts of a simple character relevant to

the issue, and is solely for convenience to avoid the necessity of recalling the witness. It should not be exercised to the extent of converting a non-expert into an expert. The exception is sustained.

The thirty-sixth exception is similar to the seventh, and is overruled for the same reason.

The thirty-seventh, thirty-eighth, thirty-ninth, fortieth, forty-first, and forty-second exceptions are sustained for the same reason as the fourteenth.

(10)    The forty-third exception was taken to the exclusion of the question: "Was there any talk among the men in the shop about the condition of the valve after the accident?" The ruling was proper. Talk by the men, if shown, would bind neither the plaintiff nor the defendant.

(11)    The forty-fourth exception was taken to the admission of evidence, in the discretion of the court, which had been overlooked in direct examination. No exception lies to the exercise of such discretion.

(12)    The forty-fifth exception was taken to a ruling permitting counsel for plaintiff to read testimony of the witness given at a former trial of this case, which testimony had been read to the witness and he had stated that he did not do the acts stated in such testimony and did not remember having so testified. The ruling was proper.

The forty-sixth exception was taken to the court's denial of a motion to direct a verdict for the defendant upon all the testimony. The evidence was conflicting, and was properly left to the jury.

The forty-seventh exception is not pressed.

The defendant also excepted to the instructions and refusals to instruct the jury as follows:

(13)    That the judge erred in charging the jury that "It was not necessary that the defendant have actual knowledge. It is only necessary that the defendant, either have actual knowledge, or might have had actual knowledge by the exercise of reasonable diligence to ascertain the condition. If the defendant company by the exercise of reasonable diligence might have ascertained or known that the stem in question was not in

suitable condition for use and negligently omitted to ascertain that fact, they would be just as liable to the plaintiff as though they had actual knowledge of it."

That the judge erred in refusing the defendant's request to charge the jury that "If the jury believe that the valve stem in use at the time of the accident was injured by LaForge, and such injury was the cause of the accident, and the defendant had no notice of such injury, the accident was due to the act of a fellow-servant, and their verdict will be for the defendant."

That the judge erred in charging the jury as set forth in the last aforementioned request of the defendant, but with the following modification thereof, to wit, "That if the defendant by the exercise of reasonable diligence might have known of the injury in time before the accident to the plaintiff to have repaired it, it was its duty to repair it or to substitute another."

That the judge erred in refusing the defendant's request to charge the jury "That the defendant is not guilty of negligence in not repairing defects in its burners, burner valves, and stems, unless it is shown that it had actual notice of such defects."

That the judge erred in charging the jury as set forth in the last aforementioned request of the defendant, modified by adding thereto the words "Or might have had notice by the exercise of reasonable diligence." (Exceptions 48 to 52, inclusive.)

These instructions and refusals to instruct were correct. "It is the duty of a master, who furnishes machinery for his servants to operate or work about, to see to it that it is reasonably safe. He cannot divest himself of this duty by devolving it on others, and if he does devolve it on others, they will simply occupy his place, and he will remain as responsible for their negligence as if he were personally guilty of it himself." *Mulvey* v. *R. I. Locomotive Works*, 14 R. I. 204, 209.

That the judge erred in refusing the defendant's request to charge the jury "That if the jury believe that the accident was caused by unusual pressure, due to the formation and explosion of gas in the pipe which supplied oil to the furnace, their verdict must be for the defendant;" and in giving the same

with a modification, adding the words, "unless such pressure was due to the negligence of the defendant in permitting such formation or explosion." The request was properly refused. The modification was correct. (Exceptions 53 and 54.)

That the judge erred in refusing the defendant's request to charge the jury that "If the jury believe that the stem produced in court is not the stem in use at the time of the accident, but that another stem then in use was the cause of the accident and the defendant had no actual notice that the stem which was in use was defective, then the defendant is not liable and your verdict will be for the defendant;" and in giving the same with a modification, adding the words, "or might have had notice by the exercise of reasonable diligence." The request was properly refused. The modification was correct. (Exceptions 55 and 56.)

The defendant's exception to the refusal of the Superior Court to grant a new trial on the grounds that the verdict and the first and third special findings were against the evidence and the weight thereof is sustained.

The case is remanded to the Superior Court for a new trial.

*John W. Hogan,* for plaintiff.

*William A. Morgan,* for defendant.